# Authorization for Publication and Advice on Copyright Protection for a Manuscript Prepared by a Department of Justice Employee

The key inquiry in determining the application of 28 C.F.R. § 45.73512, which governs publication of a manuscript by a Department of Justice employee, is whether the manuscript was prepared as a part or the employee's official duties, is devoted substantially to the responsibilities and operations of the Department, or is otherwise dependent on information obtained as a result of government employment.

The manuscript at issue, which was prepared by an employee of the Bureau of Prisons, is sufficiently related to the employee's official duties as to prohibit remuneration for publication under 28 C.F.R. § 45.735–12(a). The Deputy Attorney General may authorize publication without remuneration under 28 C.F.R. § 45.735–12(c) if it is determined that publication is in the public interest.

Although a decision on whether the manuscript in question may be copyrighted can only be made by the Register of Copyrights, it appears doubtful that the Register would grant copyright protection. The manuscript would probably be viewed as a "work of the United States Government," because the work was prepared by a government employee as part of his official duties. Such works may not be copyrighted under the Copyright Act, 17 U.S.C. § 105.

January 24, 1983

MEMORANDUM OPINION FOR THE ASSOCIATE ATTORNEY GENERAL

This responds to your request for our advice regarding authorization for publication and copyright protection of a manuscript setting forth the results of a study on aggression in federal prisons prepared by Mr. A, an employee of the Bureau of Prisons. As we understand the facts surrounding the preparation of this manuscript, we believe that authorization for publication, without a fee, should be granted based on the recommendation by the Director of the Bureau that publication of the study is in the public interest. The copyright issue raises more difficult questions, because a substantial portion of the manuscript was prepared by Government employees during the course of their official duties. Based on the limited facts presented to us, we doubt whether Mr. A's manuscript may be copyrighted, but ultimately that determination must be made by the Register of Copyrights at the Library of Congress.

## I. Facts

The manuscript which Mr. A seeks to publish and copyright records the results of a study, developed and analyzed primarily by three Bureau of Prisons

16

employees over a period of several years. The study was initiated in response to a perceived need within the Bureau for a better understanding of, and greater insight into, an identified aspect of inmate behavior in the Federal Prison System. The manuscript runs approximately 400 pages in length, and includes extensive tables, models, graphs, and sample questionnaires, as well as narrative analyses and a twelve-page Executive Summary of the longer manuscript prepared for a 1980 Warden's Conference. The introduction to the manuscript sets forth the goals of the Federal Prison System Project, under which the data was gathered and analyzed, as "providing useful information to administrators" and "producing data that will interest students of the Criminal Justice System." This perception was stimulated by, *inter alia*, a 1976 study of assaults at the Lewisberg Penitentiary, which showed that 5 out of 8 homicides occurring within the 26–month period studied were related to a particular aspect of inmate behavior, and a 1977 finding that such behavior is the primary motive for prison homicides and leads to other especially violent acts. Mr. A stated that because of the increasingly apparent lack of, and need for, comparative information regarding these findings, the Federal Prison System's Office of Research recommended the establishment of a national project to establish rates of this behavior.

The study was conducted and the manuscript prepared over a period of approximately two years by Mr. A and his co-author, Mr. B, another employee at the Bureau. Both Mr. A and Mr. B prepared approximately one half of the manuscript during the course of their official duties at the Bureau and the remaining half on their own time. The authors were assisted in large part by Mr. C, a Bureau of Prisons employee, who made significant contributions to the development of survey instruments and computer data files and also performed archival data analyses to demonstrate sample representativeness for the study. Mr. C's contributions were all made during the course of his official duties. In addition to the three primary contributors, the project received support services from many other people, both Government and non-Government employees.[1] As far as we have been able to determine, the study was funded from the Bureau of Prisons general operating budget, and was supported in large measure by the Bureau's staff in the course of their official duties.

## II. Publication

Publication of Mr. A's manuscript is governed by 28 C.F.R. § 45.73512. Subsection (a) of this provision prohibits Department employees from accepting fees from outside sources for publications that were prepared as "a part of the official duties of the employee."[2] Subsection (b) prohibits receipt of

---

[1] For example, we understand that the person who interviewed the inmates for the study was hired from outside the Government and paid with Bureau of Prisons funds for his services.

[2] 28 C.F.R. § 45.735–12(a) provides:

> (a) No employee shall accept a fee from an outside source on account of a public appearance, speech, lecture, or publication if the public appearance or the preparation of the speech, lecture, or publication was a part of the official duties of the employee.

> compensation or anything of monetary value for ... writing ...
> the subject matter of which is devoted substantially to the re-
> sponsibilities, programs or operations of the Department, or
> which draws substantially on official data or ideas which have
> not become part of the body of public information.

Subsection (c) prohibits Department employees from engaging in writing

> whether with or without compensation ... that is dependent on
> information obtained as a result of ... Government employment
> except when that information has been made available to the
> general public or when the Deputy Attorney General gives
> written authorization for the use of nonpublic information on the
> basis that the use is in the public interest.

The key inquiry in determining the applicability of the prohibitions contained in these provisions to Mr. A's manuscript is whether the manuscript was prepared as a part of Mr. A's official duties at the Bureau of Prisons, is devoted substantially to the responsibilities and operations of the Department, or is otherwise dependent on information obtained as a result of his Government employment.[3]

The Department generally has interpreted the prohibitions contained in § 45.735–12 rigorously to preclude any substantial potential for conflicts of interest and the resulting impairment of public confidence in the performance of its federal law enforcement duties. Notwithstanding Mr. A's intention to publish the manuscript without compensation, we believe it is clear that Mr. A's manuscript is within the category of documents to which the provisions contained in § 45.73512 apply. The factors which lead us to this conclusion are: (1) the manuscript is styled as a Final Report to the Director; (2) the subject matter of the study is devoted substantially to work carried on by the Bureau of Prisons' Office of Research; (3) the study upon which the manuscript is based was developed and executed largely on "on duty" time by Department employees; and (4) the study was prepared in response to an official request of the Director of the Bureau of Prisons, although it seems clear that the Director did not request a report of the detail and magnitude of that prepared by Mr. A.[4]

Accordingly, we believe that the manuscript is sufficiently related to Mr. A's official duties at the Bureau of Prisons as to prohibit his remuneration for its publication. The question of whether publication of the manuscript should be permitted at all is a question of judgment which we believe can best be

---

[3] A secondary inquiry is whether the data contained in Mr. A's study has "become part of the body of public information." If the information already has been made available to the general public, without regard to the question of compensation, subsection (c) does not require the written authorization of the Deputy Attorney General for publication. If the preparation of the work was a part of the official duties of employees or if the subject matter of the work is "devoted substantially" to the responsibilities or operations of the Department, however, subsections (a) and (b) preclude receipt of compensation from outside sources, even if the Deputy Attorney General has authorized publication or the information has otherwise been made public.

[4] In fact, Mr. A prepared a preliminary thirteen-page Executive Summary for the Director which outlined the tentative results of the study and projected future areas of inquiry.

exercised by the Bureau of Prisons. Even assuming the information contained in the study is not public information at this time, we see no reason why the Deputy Attorney General should deny the authorization required by subsection (c) for publication if the Director of the Bureau has, by his request for authorization on Mr. A's behalf, indicated his interest in publication of the study's results. Absent a concern elsewhere in the Department that such official data be kept confidential, we would defer to the judgment of the Division or Office which developed the data that its publication will not harm the Government's activities.

## III. Copyright Protection

The determination whether Mr. A's manuscript may receive copyright protection turns on whether the manuscript properly may be described as a "work of the United States Government." Section 105 of the Copyright Act, 17 U.S.C. § 105, prohibits the granting of copyright protection to "any work of the United States Government," defined in § 101 as "a work prepared by an officer or employee of the United States Government as part of that person's official duties." Thus, all work of the United States Government is intended to be in the public domain. The Historical Notes to § 105 explain that "under this definition, a Government official or employee would not be prevented from securing copyright in a work written at that person's own volition and outside his or her duties, even though the subject matter involves the Government work or professional field of the official or employee."[5]

---

[5] *See* H.R. Rep. No. 1476, 94th Cong , 2d Sess 58 (1976). The Notes go on to address:

[t]he more difficult and far-reaching problem whether the definition should be broadened to prohibit copyright in works prepared under U.S. Government contract or grant As the bill is written, the Government agency concerned could determine in each case whether to allow an independent contractor or grantee, to secure copyright in works prepared in whole or in part with the use of Government funds. The argument that has been made against allowing copyright in this situation is that the public should not be required to pay a "double subsidy," and that it is inconsistent to prohibit copyright in works by Government employees while permitting private copyrights in a growing body of works created by persons who are paid with Government funds. Those arguing in favor of potential copyright protection have stressed the importance of copyright as an incentive to creation and dissemination in this situation, and the basically different policy considerations applicable to works written by Government employees and those applicable to works prepared by private organizations with the use of Federal funds.

The bill deliberately avoids making any sort of outright, unqualified prohibition against copyright in works prepared under Government contract or grant There may well be cases where it would be in the public interest to deny copyright in the writings generated by Government research contracts and the like; it can be assumed that, where a Government agency commissions a work for its own use merely as an alternative to having one of its own employees prepare the work, the right to secure a private copyright would be withheld However, there are almost certainly many other cases where the denial of copyright protection would be unfair or would hamper the production and publication of important works. Where, under the particular circumstances, Congress or the agency involved finds that the need to have a work freely available outweighs the need of the private author to secure copyright, the problem can be dealt with by specific legislation, agency regulations, or contractual restrictions

*Id.* at 59 *See generally Schnapper* v. *Foley*, 667 F.2d 102 (D.C. Cir. 1981), *cert denied*, 455 U.S. 948 (1982). This provision would not apply to Mr. A's circumstances because he is a Government employee, not a contractor.

19

Using these guidelines, we believe that Mr. A's manuscript falls within the parameters of a "work of the United States Government" and therefore is not entitled to copyright protection. Although the magnitude of the manuscript is arguably a reflection of Mr. A's personal estimation of the significance of the study for the Federal Prison System, some portion of which undoubtedly was prepared during off-duty hours, the facts that the study was initiated in response to an official request or recommendation from within the Bureau of Prisons' Office of Research, the analytical tools used in the study were developed and implemented substantially by Bureau employees during on duty hours, and the study was presented as a "Final Report to the Director" setting forth the results of the Federal Prison System's study are, in our judgment, sufficient to render the manuscript an "official" document for the purposes of the Copyright Act. Thus, even though the study may have far exceeded the scope of the official request for such data — indeed, it is precisely because the work is so substantial that a significant risk of pirating exists — to permit the author(s) to claim copyright protection for work which was substantially supported and funded by the federal government through the work of its employees would significantly undermine the statutory scheme and legislative intent of § 105.

Judicial interpretations of § 105, and its predecessor provisions in the 1909 Copyright Act, support this conclusion.[6] In *Public Affairs Associates, Inc.* v. *Rickover*, 268 F. Supp. 444 (D.D.C. 1967), the court held that two speeches prepared and delivered by Vice Admiral Rickover on his own private time could properly be the subject of copyright protection, even though the subject of one of the speeches related to the Vice Admiral's official duties as an employee of the United States Navy and the Atomic Energy Commission. The court found significant the following facts: (1) neither Admiral Rickover nor his Government employers believed that the speeches fell within Rickover's official duties, nor was there any evidence that he was directed to make the speeches by his superiors; (2) delivery of the speeches was precipitated by invitations extended directly to Rickover in his private capacity by two private organizations; (3) the speeches were drafted in Rickover's home, and were delivered on his own time; and (4) the speech the subject matter of which related to Rickover's official duties

> was a non-technical address to a non-technical audience. The speech was subjective in nature and was not consistent with Atomic Energy Commission policy . . . . All information concerning Shippingport [Power Station] was unclassified. Prior to the speech there had been full dissemination of the technical information derived from Shippingport by the Technical Information Division of the Atomic Energy Commission.

*Id.* at 453. In short, the only connection the court found between Admiral

---

[6] *See* 17 U.S.C. § 8 (1970), which provided in pertinent part that "[n]o copyright shall subsist . . in any publication of the United States Government."

Rickover's speeches and the United States Government was in the "purely mechanical operations" of his administrative assistant, who "typ[ed] a final draft for duplication . . . on Naval facilities." This connection was held to be insufficient to render the speeches "works of the United States Government." *Id.* at 449.

Earlier consideration of the 1909 Act's provision excepting works of the United States Government from copyright protection is found in *United States* v. *First Trust Company of Saint Paul,* 251 F.2d 686 (8th Cir. 1958). There the court examined the rough notes prepared by Captain Clark during the Lewis and Clark Expedition in 1803–04. Based upon the fact that the materials contained, in addition to data that President Jefferson requested the Expedition to gather in its official record, "a great many personal and private notations, including information about the receipt of newspapers or letters, details of personal illnesses, social engagements, and other such items as might not be expected to be found in notes of an official character or in an official record," the court affirmed the district court's conclusion "that the notes were the private and personal writings of Captain Clark, unofficial in character and therefore not the work of a Government representative engaged in the performance of his official duties." *Id.* at 690.

Judgments about copyright protection rest ultimately with the Register of Copyrights. This Office therefore is necessarily tentative in making such judgments, particularly when we do not have at our disposal all facts relevant to the determination. Accordingly, we recommend that you advise Mr. A to seek further guidance on this matter from the Copyright Office directly.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

21